1  Stephen M. Harris, Bar No. 110626
   smh@kpclegal.com
2  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
3  Glendale, California 91203-1922
   Telephone: (818) 547-5000
4  Facsimile: (818) 547-5329

5  Attorneys for Plaintiff
   ANI AVEDISIAN aka ANI ACEVEDO,
6  individually, and on behalf of a class of similarly
   situated individuals

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11 ANI AVEDISIAN aka ANI ACEVEDO,     ) NO.   CV12-00936 DMG (CWx)
   individually, and on behalf of a class of  ) [CLASS ACTION]
12 similarly situated individuals,     )
                                       ) Date:          June 6, 2014
13              Plaintiff,             ) Time:          9:30 a.m.
          v.                           ) Ctrm:                   7
14                                     )
   MERCEDES-BENZ USA, LLC, and Does   ) **PLAINTIFF'S MEMORANDUM**
15 1 to 10,                            ) **OF POINTS AND AUTHORITIES**
                                       ) **IN SUPPORT OF MOTION FOR**
16              Defendants.            ) **CLASS CERTIFICATION**
                                       )
17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

                              -1-

1039060.1  08000/00941

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

I.   INTRODUCTION ......................................................................................... 2

II.  FACTUAL BACKGROUND ........................................................................ 3

    A.   Procedural Background ........................................................................ 4

    B.   Plaintiff Purchases MBUSA Vehicle Containing Chrome Defect ................................................................................................. 5

        1.   Passengers In Plaintiff's Vehicle Were Also Cut By The Flaking, Peeling And Cracking Chrome Trim Pieces ..................................................................................... 5

    C.   The Chrome Defect .............................................................................. 6

    D.   There Is A Safety Concern Due To The Chrome Defect ...................... 6

    E.   MBUSA Has Not Disclosed This Safety Concern .............................. 8

III. ARGUMENT AND AUTHORITIES ............................................................ 8

    A.   Ninth Circuit Standards for Class Certification .................................. 8

    B.   Plaintiff's Proposed Class Easily Satisfies Rule 23 ............................ 9

        1.   The Class is Ascertainable ........................................................ 9

        2.   The Class and Subclasses Meet Rule 23(a)'s Requirements ............................................................................ 11

            a.   The Class or the Subclasses Are Numerous .................... 11

            b.   Numerous Common Issues Exist ..................................... 12

            c.   Plaintiff's Claims Are Typical of Those of Other Class Members .............................................................. 13

            d.   Plaintiff and Her Counsel Will Adequately Represent the Interests of Absent Class Members .......................................................................... 14

        3.   The Class Meets the Requirements of Rule 23(b)(3) ............... 15

            a.   Common Issues Predominate Over Individual Ones ................................................................................ 16

                (1)   Plaintiff's Claims Stem From Common Defects ................................................................. 17

KNAPP,
PETERSEN
& CLARKE

-i-

**TABLE OF CONTENTS (cont.)**

**Page**

(2)  The Claims Are Susceptible to Common Proof ........................................................................ 17

(3)  MBUSA Uniformly Failed to Inform Consumers of the Defect in Violation of California's Consumer Protection Law And In Violation Of The Duty To Disclose Material Defects ................................. 18

(4)  The Implied Warranty Theory Is Subject To Common Proof ................................... 20

b.  The Class Action Device is Superior ............................. 21

(1)  No Individual Litigant Could Marshal the Resources Plaintiff's Counsel Can Devote to This Litigation ....................................... 21

(2)  The Class Is Tailored to Eliminate Manageability Concerns ........................................ 22

IV.  CONCLUSION ................................................................. 23

KNAPP,
PETERSEN
& CLARKE

-ii-

1939969.1  08000/00941

# TABLE OF AUTHORITIES

Page(s)

CASES

*Alonzo v. Maximus, Inc.*,
   ___ F.3d ___, No. 2:08-CV- 06755-JST (MANx),
   2011 WL 2437444 (C.D. Cal. June 17, 2011)...................................................... 13

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 16

*Chamberlan v. Ford Motor Co.*,
   223 F.R.D. 524 (N.D. Cal. 2004) ................................................................. 12, 18

*Chavez v. Blue Sky Nat. Bev. Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ....................................................................... 11

*Daffin v. Ford Motor Co.*,
   458 F.3d 549 (6th Cir. 2006)............................................................................... 17

*Donovan v. Philip Morris USA, Inc.*,
   268 F.R.D. 1 (D. Mass. 2010) ............................................................................ 22

*Evans v. IAC/Interactive Corp.*,
   244 F.R.D. 568 (C.D. Cal. 2007) .................................................................... 9, 10

*Gable v. Land Rover N.A. Inc.*,
   No. SACV 07-0376, 2011 WL 3563097 (C.D. Cal. July 25, 2011) .................. 23

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)............................................................... 11, 14, 16

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011)................................................................... 21, 22

*In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*,
   ___ F.3d___, No. 09 MDL 2007-GW (PJWx)
   2011 WL 3204588 (C.D. Cal. 7/25/11)................................................................ 9

*In re Northrop Grumman Corp. ERISA Litig.*,
   No. CV 06-06213 MMM, 2011 WL 3505264 (C.D. Cal. 3/29/11) ...9, 10, 12, 13

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*In re Zurn Pex Plumbing Prod. Liab. Litig.,*
   644 F.3d 604 (8th Cir. 2011)............................................................................17

*Johnson v. Gen. Mills, Inc.,*
   275 F.R.D. 282 (C.D. Cal. 2011) .............................................................14, 15

*Keilholtz v. Lennox Hearth Prods., Inc.,*
   268 F.R.D. 330 (N.D. Cal. 2010) .............................................................11, 20

*Mevorah v. Wells Fargo Home Mortg.,*
   571 F.3d 953 (9th Cir. 2009)......................................................................16

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
   238 F.R.D. 482 (C.D. Cal. 2006) .............................................................11, 19

*Parkinson v. Hyundai Motor Am.,*
   258 F.R.D. 580 (C.D. Cal. 2008) ...............................................11, 12, 21, 22

*Schramm v. JPMorgan Chase Bank,*
   NA., No. LA CV09-09442 JAK, 2011 WL 5034663 (C.D. Cal. Oct. 19,
   2011)...............................................................................................................19

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011)...............................................................18, 19

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,*
   209 F.R.D. 159 (C.D. Cal. 2002) ............................................................9

*Thomas v. Baca,*
   231 F.R.D. 397 (C.D. Cal. 2005) ............................................................12

*Westways World Travel, Inc. v. AMR Corp.,*
   218 F.R.D. 223 (C.D. Cal. 2003) ............................................................11

*Wolin v. Jaguar Land Rover North America,*
   617 F.3d 1168 (9th Cir. 2010)...................2, 8, 12, 13, 14, 16, 17, 18, 20, 21, 23

*Yamada v. Nobel Biocare Holding,*
   No. 2:10-cv04849-JHN-PLAx, ___ F.3d ___,
   2011 WL 3634197 (C.D. Cal. Aug. 12, 2011)..........................17, 18, 19, 20, 23

1939969.1   08000/00941

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ...................................................................23

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir.) ............................................................................9

**STATUTES**

California Civil Code § 1791.1(a) ...................................................................21

California Legal Remedies Act .........................................................................2

California Unfair Competition Law ...................................................................2

**MISCELLANEOUS**

Federal Rules of Civil Procedure
   23 .........................................................................................................9, 17
   23(a) ................................................................................................2, 8, 14
   23(b) ....................................................................................................8, 15
   23(b)(3) .............................................................................2, 8, 9, 15, 16
   23(b)(3) (A) — (D) ...............................................................................21

1030060 1   08000/00041

# I.

## INTRODUCTION

Plaintiff brings this action on behalf of all persons (the "Class") who purchased or leased the following MBUSA vehicles containing chrome trim parts: 2003 to 2009 E-Class vehicles; door handles and non-push button start shift knobs; 2001 to 2007 C-Class vehicles: cup holders, and non-push button start shift knobs; 2008 to 2013 C-Class vehicles; bezel on top of cup holders; 2003 to 2009 CLK-Class vehicles; cup holders; handle on sliding door over center console; 2006 to 2011 CLS-Class vehicles; cup holders, door handles; non-push button start shift knobs; trim rings around center console release buttons; trim ring around the ignition cylinder (the "Class Vehicles"). (See, Proposed Second Amended Complaint ("SAC"), Doc. No. 85 ¶ 4.[1])

The Class Vehicles suffer from defects which cause the chrome trim pieces to flake, crack and peel, and pose a threat to safety of the proposed class. Plaintiff moves to certify a class on behalf of all purchasers or lessors of the Class Vehicles, alleging claims under the California Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), fraud, and breach of implied warranty. Here, as in *Wolin v. Jaguar Land Rover North America*, 617 F.3d 1168, 1172 (9th Cir. 2010), Plaintiff's claims easily satisfy the requirements for certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and the case should be certified accordingly.

////

////

////

---

[1] If the court denies Plaintiff leave to amend the complaint, then Plaintiff agrees to limit her proposed class to those 2006-2011 vehicles containing the chrome trim parts which are identified in the SAC. (See, Doc. 85, ¶ 4, and Doc. 13, ¶ 3, First Amended Complaint ("FAC").)

KNAPP,
PETERSEN
& CLARKE

-2-

1039060 1  08000/00941

## II.

## FACTUAL BACKGROUND

The Class Vehicles suffer from common defects resulting in cracking, peeling and flaking of the interior chrome trim pieces (the "Chrome Defect"). (SAC, ¶ 5, and Declaration of Michael Stapleford ("Stapleford Decl.") ¶¶ 1-26.) As established below, the chrome trim pieces which flake, peel and crack have sharp edges which can cut consumers.

The Chrome Defect is confirmed in MBUSA's production of warranty claims data and customer center calls, among other evidence.[2] The documents produced by MBUSA (attached as exhibit 1 to the declaration of Stephen Harris supporting the application to file documents under seal, "Confidential Documents"), contain the following pertinent references:

- Cuts reported by MBUSA customers: Document Numbers 1138, 1143, 1146, 1156, 1161 (twice) 1165, 1178, 1180, 1183, 1186, 1187, (twice) 1216, 1244, 1247, 1251, 1255, 1274, 1277, 1288, 1291, 1294, 1296, 1298.[3]

- Reports of Chrome Trim Pieces having Sharp or Jagged Edges: Document Numbers 1138, 1141, 1142, 1144, 1145 (twice), 1146, 1147, 1149, 1154 (twice), 1156 (three times), 1159, 1162, 1165 (twice), 1169, 1170, 1174, 1176, 1177 (twice) 1180 (twice) 1181 (twice), 1182, 1183 (twice), 1184 (twice) 1185 (three times) 1191, 1201, 1208, 1209, 1213, 1217, 1224, 1227, 1228, 1231, 1233 (twice), 1235, 1239, 1242, 1244,

---

[2] See, deposition of Daniel Edwards, "Edwards Dep.", attached as exhibit 3 to Declaration of Stephen M. Harris supporting class certification motion ("Harris Decl."), 7: 15-18; 10: 14-12:18; 13: 25-14: 25; 72: 16-19; 112: 1-113: 11; see, also, Declaration of Stephen M. Harris supporting application to seal, ¶ 2. These records only consist of warranty claim data and call center records relating to the chrome trim pieces in CLS vehicles. Plaintiff is still attempting to obtain records relating to the trim pieces in other MBUSA vehicles. See, Harris Decl., ¶¶ 2-4.

[3] There are 25 total references to cuts in the Confidential Documents.

KNAPP,
PETERSEN
& CLARKE

1     1247, 1250 (twice) 1251, 1252, 1254, 1256, 1258, 1263, 1264, 1266,

2     1270, 1274 (twice) 1275, 1284 (twice) 1285 (twice) 1287, 1289, 1290,

3     1292, 1294, 1296.[4]

4     Even though MBUSA is aware of the defect, it took no steps to notify the

5   Class Vehicles' owners of this issue. (Deposition of Michelle Lucy Wirth, "Wirth

6   Dep.", Exhibit 8 to Harris Decl., p. 47: 7-24; Stapleford Decl., ¶¶ 1-25; Harris Decl.,

7   ¶ 3; and Confidential Documents, referred to above.)

8   **A.   Procedural Background**

9     This is a class action based on a defect in the vehicles identified in Plaintiff's

10  complaint, which have interior trim pieces which flake, crack and peel, thereby

11  posing the risk of lacerations to occupants of these vehicles. Plaintiff contends that

12  the Class Vehicles' mechanical failure is that the interior trim pieces flake, crack, and

13  peel, thereby creating sharp edges on the trim pieces. These sharp edges constitute a

14  safety hazard since consumers who touch or grab the flaking, cracking, and peeling

15  trim pieces can and have lacerated fingers, resulting in injuries.  Doc. 13, ¶ 4; Doc.

16  85, ¶ 5.

17    The lawsuit was filed in February of 2012.[5] Thereafter, the parties briefed

18  MBUSA's motion to dismiss and motion to strike, with the briefing concluded in

19  June of 2012. In November of 2012, the court advised the parties of its intent to

20  convert the challenge to the breach of warranty claim to a motion for summary

21  judgment. Ultimately, on May 22, 2013, the court rejected the challenge to the

22  pleadings by Mercedes, but granted the motion for summary judgment as to the

23  breach of warranty claim. Doc. 28.

24  _____

25  [4] There are a total of 77 references to chrome trim pieces having sharp or jagged
    edges. Also, document 1219 of the Confidential Documents includes a report by

26  MBUSA of a cut hazard, documents 1156 and 1188, refer to a rough edge or rough
    edges on chrome trim pieces, and document 1139 states that MBUSA replaced a

27  chrome trim piece due to a safety concern.

    [5] Plaintiff filed a first amended complaint in April of 2012.

KNAPP,
PETERSEN
& CLARKE   28

-4-

1    Plaintiff has filed a motion for leave to amend to more narrowly define the

2 class. Doc. 83.

3 **B.     Plaintiff Purchases MBUSA Vehicle Containing Chrome Defect**

4    Plaintiff Ani Avedisian purchased a 2006 Mercedes Benz CLS-500 vehicle in

5 May of 2009. While she was operating the vehicle she cut her arm and palms on the

6 gear shifter, center console button and cup holder, due to the Chrome Defect.

7 Avedisian Decl., ¶¶ 2-7. Plaintiff's daughter also was cut by the chrome trim parts in

8 the vehicle. *Id.* ¶ 8.

9    Plaintiff's husband, Juan Acevedo, also operated Plaintiff's Mercedes vehicle.

10 While he was operating the vehicle he was cut by the flaking, peeling and cracking

11 chrome trim pieces. Juan Acevedo Decl., ¶ 8. Acevedo took the vehicle to Mercedes

12 of Calabasas on multiple occasions, unsuccessfully attempting to rectify the problem

13 with the chrome trim pieces. *Id.*, ¶¶ 3-6, and exhibits 1-2, attached thereto.

14    Ultimately, due to the cracking and peeling of the trim pieces, the cup holder

15 was replaced by Plaintiff. Avedisian Decl., ¶ 9; Acevedo Decl., ¶ 7, and exhibits 3-4,

16 attached thereto.

17    **1.     Passengers In Plaintiff's Vehicle Were Also Cut By The Flaking,**

18    **Peeling And Cracking Chrome Trim Pieces**

19    A number of relatives or acquaintances of Plaintiff and her husband also

20 sustained cuts due to the Chrome Defect. Deposition of Maria Acevedo, exhibit 1 to

21 Harris Decl., 20: 25-24: 2; 24: 4-19; 34: 5-9; Deposition of Akop Avedisian, attached

22 as exhibit 2 to Harris Decl., 30: 12-31: 4; 34: 20-23; 37: 16-19; 52: 15-53: 18; 54:

23 2-13; Deposition of Ranulfo Elizarraras, attached as exhibit 4 to Harris Decl., 28: 21-

24 31: 22; 32: 3-11; 42: 20-24; 50: 8-13; Deposition of Leo Acevedo Perez, attached as

25 exhibit 5 to Harris Decl., 30: 24-31: 3; 31: 11-32: 17; Deposition of Anoush Sarkisyan,

26 attached as exhibit 6 to Harris Decl., 14: 15-22; 27: 16-28: 13; 29: 3-19; 36: 21-37:17;

27 57: 3-13; 58: 17-59: 12; Deposition of Melanie Sunshine Speregan, attached as

28 exhibit 7 to Harris Decl., 23: 18-23; 25: 18-23; 29: 18-24; 31: 10-32: 9; 33: 6-20.

KNAPP,
PETERSEN
& CLARKE

-5-

## C.     The Chrome Defect

Plaintiff alleges that the Chrome Defect causes the interior chrome trim pieces of the Class Vehicles to flake, crack and peel. Stapleford, an expert consulted by Plaintiff, has conducted a detailed investigation of the Chrome Defect. Stapleford Decl., ¶¶ 1-26, and exhibits A-E, attached thereto.

The chrome trim pieces are made of ABS, or Acrylonitrile Butadiene Styrene. Plateable ABS is a relatively low cost material useful for manufacturing parts to be plated with chrome. *Id.* ¶ 15. All the trim pieces tested were made of ABS. *Id.* ¶ 16.

The chrome trim pieces are defective because:

- The etching process used to prepare the parts for plating produces defective parts, which permits separation of the metal plating from the ABS substrate.  Also, the chrome trim parts show cracking from residual molding stress, which along with inadequate etching, promotes failure of the mechanical bond between the copper plating and the ABS substrate;

- Interior door handles (in addition to the foregoing defect) also contain a remnant bead of ABS material along the mold parting line on the upper surface of the door handle, with the chrome plating adhesion failing along the remnant bead. *Id.*, ¶ 24.[6]

As explained below, the defect in the chrome trim pieces raises a safety concern.

## D.     There Is A Safety Concern Due To The Chrome Defect

The safety concern created by the Chrome Defect is manifested by the cuts sustained by Plaintiff, her husband, and other occupants of Plaintiff's vehicle, as referred to above. Also, see, Avedisian Decl., ¶ 10; Acevedo Decl. ¶ 9; Sarkisyan

---

[6] See, also, Declaration of Robert L. Starr, ¶¶ 7-9, and exhibits 1, and 6-7, attached thereto.

KNAPP,
PETERSEN
& CLARKE

-6-

1939969.1  08000/00941

Deposition, exhibit 6 to Harris Decl., 57: 3-13; 58: 17-59: 12. The safety concern is also evidenced by the warranty claim data and the record of warranty inquiries maintained by MBUSA. The Confidential Documents contain the following pertinent references[7]:

- Cuts reported by MBUSA customers: Document Numbers 1138, 1143, 1146, 1156, 1161 (twice) 1165, 1178, 1180, 1183, 1186, 1187, (twice) 1216, 1244, 1247, 1251, 1255, 1274, 1277, 1288, 1291, 1294, 1296, 1298.[8]

- Reports of Chrome Trim Pieces having Sharp or Jagged Edges: Document Numbers 1138, 1141, 1142, 1144, 1145 (twice), 1146, 1147, 1149, 1154 (twice), 1156 (three times), 1159, 1162, 1165 (twice), 1169, 1170, 1174, 1176, 1177 (twice) 1180 (twice) 1181 (twice), 1182, 1183 (twice), 1184 (twice) 1185 (three times) 1191, 1201, 1208, 1209, 1213, 1217, 1224, 1227, 1228, 1231, 1233 (twice), 1235, 1239, 1242, 1244, 1247, 1250 (twice) 1251, 1252, 1254, 1256, 1258, 1263, 1264, 1266, 1270, 1274 (twice) 1275, 1284 (twice) 1285 (twice) 1287, 1289, 1290, 1292, 1294, 1296.[9]

Moreover, Howard Pitchon, M.D., an expert in infectious diseases, testifies that sustaining cuts from peeling chrome exposes the victim to a risk of infections, or anti-biotic resistant germs. And this risk is particularly acute for individuals who are

---

[7] See, "Edwards Dep.", attached as exhibit 3 to Harris Decl., 7: 15-18; 10: 14-12:18; 13: 25-14: 25; 72: 16-19; 112: 1-113: 11; see, also, Declaration of Stephen M. Harris supporting application to seal, ¶ 2. These records only consist of warranty claim data and call center records relating to the chrome trim pieces in CLS vehicles. Plaintiff is still attempting to obtain records relating to the trim pieces in other MBUSA vehicles. See, Harris Decl., ¶¶ 2-4.

[8] There are 25 total references to cuts in the Confidential Documents.

[9] There are a total of 77 references to chrome trim pieces having sharp or jagged edges. Also, document 1219 of the Confidential Documents includes a report by MBUSA of a cut hazard, documents 1156 and 1188, refer to a rough edge or rough edges on chrome trim pieces, and document 1139 states that MBUSA replaced a chrome trim piece due to a safety concern.

1  immune-compromised in some way, such as persons with diabetes. See, Pitchon

2  Decl., ¶¶ 1-22, and exhibits A-D, attached thereto.

3      There have been several Office of Defect investigations which also verify the

4  safety concern. See, Starr Decl., ¶¶ 10-11, and exhibits 2-3, attached thereto. Finally,

5  Starr has previously represented an individual who sustained a serious laceration due

6  to the Chrome Defect, requiring hospitalization and sutures. *Id.*, ¶¶ 12-13, and

7  exhibits 4-5.

8  **E.   MBUSA Has Not Disclosed This Safety Concern**

9      Plaintiff asserts that MBUSA has not disclosed this safety concern to

10  consumers. (See, e.g., SAC, ¶¶ 15-18, 38-44.) MBUSA's own marketing witness

11  concedes that there has not been a disclosure of the Chrome Defect. Wirth

12  Deposition, 43: 21-44: 2; 47: 7-24. In addition, MBUSA has sold vehicles containing

13  the chrome trim pieces since as early as 2001, thus supporting that MBUSA acquired

14  knowledge of the flaking, cracking and peeling of chrome trim pieces well before

15  Plaintiff purchased her 2006 vehicle. Harris Decl., ¶ 3; Stapleford Decl., ¶ 24;

16  Confidential Documents referred to above, in subpart II, D.

17                              **III.**

18                  **ARGUMENT AND AUTHORITIES**

19  **A.   Ninth Circuit Standards for Class Certification**

20      A Plaintiff seeking to represent a class must satisfy the four threshold

21  requirements of Rule 23(a), as well as the requirements for certification under one of

22  the three subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for

23  certification as a class action if: "(1) the class is so numerous that joinder of all

24  members is impracticable; (2) there are questions of law or fact common to the class;

25  (3) the claims or defenses of the representative parties are typical of the claims or

26  defenses of the class; and (4) the representative parties will fairly and adequately

27  protect the interests of the class." *Wolin*, 617 F.3d at 1172 (quoting Fed. R. Civ. P.

28  23(a)). Here, Plaintiff seeks class certification under Rule 23(b)(3), which authorizes

KNAPP,
PETERSEN
& CLARKE

-8-

1939969.1   08000/00941

1   certification where the court finds "that the questions of law or fact common to Class

2   Members predominate over any questions affecting only individual members, and

3   that a class action is superior to other available methods for fairly and efficiently

4   adjudicating the controversy." *Id*. (quoting Fed. R. Civ. P. 23(b) (3)).

5      Plaintiffs seeking class certification bear the burden of demonstrating that each

6   element of Rule 23 is satisfied, and a district court may certify a class only if it

7   determines that the plaintiffs have borne their burden. *Zinser v. Accufix Research*

8   *Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir.

9   2001). To make this determination, it is generally inappropriate to consider the

10  merits of plaintiff's claims. *In re Northrop Grumman Corp. ERISA Litig.*, No. CV

11  06-06213 MMM, 2011 WL 3505264, at * 7 (C.D. Cal. March 29, 2011) (Morrow,

12  J.); *see also In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, ___ F.3d

13  ___, No. 09 MDL 2007-GW(PJWx), 2011 WL 3204588, at *3 (C.D. Cal. July 25,

14  2011). Rather, the court must take the substantive allegations of the complaint as

15  true. *In re Aftermarket Automotive Lighting*, 2011 WL 3204588, at *3 (citing *Blackie*

16  *v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).) Nonetheless, "Rule 23 does not set

17  forth a mere pleading standard. A party seeking class certification must affirmatively

18  demonstrate his compliance with the Rule—that is, he must be prepared to prove that

19  there are in fact sufficiently numerous parties, common questions of law or fact, etc."

20  *Id*. (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)).

21  **B.   Plaintiff's Proposed Class Easily Satisfies Rule 23**

22      **1.   The Class is Ascertainable**

23      Although not mentioned in Rule 23, courts imply a prerequisite that the

24  proposed class be ascertainable if it is to be certified. *In re Northrop Grumman*, 2011

25  WL 3505264, at *7 n.61 (internal quotation omitted); *see also Thomas & Thomas*

26  *Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163

27  (C.D. Cal. 2002). That is, "the proponent must first establish that a class does in fact

28  exist." *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. 2007)

KNAPP,
PETERSEN
& CLARKE

1   (internal quotations omitted). "A class definition should be precise, objective, and

2   presently ascertainable." *Id.* (internal quotations omitted). Ascertainability is satisfied

3   when it is "administratively feasible for the court to determine whether a particular

4   individual is a member." *In re Northrop Grumman*, 2011 WL 3505264, at *7 n.61

5   (internal quotation omitted).

6          Here, the Class is defined as:

7                 2003 to 2009 E-Class vehicles; door handles and non-push button

8          start shift knobs; 2001 to 2007 C-Class vehicles: cup holders, and non-

9          push button start shift knobs; 2008 to 2013 C-Class vehicles; bezel on

10         top of cup holders; 2003 to 2009 CLK-Class vehicles; cup holders;

11         handle on sliding door over center console; 2006 to 2011 CLS-Class

12         vehicles; cup holders, door handles; non-push button start shift knobs;

13         trim rings around center console release buttons; trim ring around the

14         ignition cylinder.

15  (SAC ¶ 4.)

16         Alternatively, if the court declines to grant leave to file a second amended

17  complaint, Plaintiff's class is defined as follows:

18                2006 to 2009 E-Class vehicles; door handles and non-push button

19         start shift knobs; 2006 to 2007 C-Class vehicles: cup holders, and non-

20         push button start shift knobs; 2008 to 2011 C-Class vehicles; bezel on

21         top of cup holders; 2006 to 2009 CLK-Class vehicles; cup holders;

22         handle on sliding door over center console; 2006 to 2011 CLS-Class

23         vehicles; cup holders, door handles; non-push button start shift knobs;

24         trim rings around center console release buttons; trim ring around the

25         ignition cylinder.

26  (See, FAC, Doc. 13, ¶ 3 and Harris Decl., ¶ 3.)

27         The class definition utilizes objective criteria, making class membership

28  objectively verifiable—the purchase of a Class Vehicles is easily demonstrated by

KNAPP,
PETERSEN
& CLARKE

-10-

1  documentation of the purchase or lease. (Avedesian Decl., ¶ 3; Edwards Dep., exhibit

2  3 to Harris Decl., 28: 7-24; 57:1-10; 56:8-58: 10; 59: 5-25; 101: 17-108: 6;

3  Stapleford Decl., ¶ 24; Harris Decl., ¶ 3.) Indeed, similar classes are routinely found

4  ascertainable by California federal courts. *See, e.g., Parkinson v. Hyundai Motor*

5  *Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (finding a class ascertainable when, inter

6  alia, the class definition identified a particular make, model, and production period

7  for the class vehicle); *Keilholtz v. Lennox Hearth Prods., Inc.*, 268 F.R.D. 330, 336

8  (N.D. Cal. 2010) (finding the class ascertainable when unnamed plaintiffs would be

9  able to identify the allegedly defective goods themselves); *Chavez v. Blue Sky Nat.*

10  *Bev. Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (finding class could be ascertained

11  with objective criteria).

12       Accordingly, the ascertainability requirement is met here.

13       **2.    The Class and Subclasses Meet Rule 23(a)'s Requirements**

14            **a.    The Class or the Subclasses Are Numerous**

15       "The prerequisite of numerosity is discharged if 'the class is so large that

16  joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

17  1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). To satisfy the numerosity

18  requirement, joinder of all parties must be "impracticable," but not necessarily

19  impossible. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D.

20  Cal. 2006). It is not necessary to precisely identify the number of Class Members—it

21  is appropriate to rely on reasonable inferences. *Westways World Travel, Inc. v. AMR*

22  *Corp.*, 218 F.R.D. 223, 233-34 (C.D. Cal. 2003). MBUSA cannot reasonably dispute

23  that the numerosity requirement is met here. This is because the number of CLS

24  vehicles alone is approximately 12,000. (See, Edwards dep., exhibit 3 to Harris

25  Decl., 12: 2-15; 13: 25-14: 20; 97: 23-98: 1.[10]) Such evidence easily satisfies the

26  _____

27  [10] Mr. Edwards testifies that the approximately 1,100 warranty claims regarding the cup holder represent a claims rate of 8.8%. Plaintiff assumes that there is a 9%

28  claims rate, based on the 1,100 warranty claims relating to cup holders, which results
(Continued...)

1  numerosity requirement. *See id.*; *see also Parkinson*, 258 F.R.D. at 588 (finding the

2  numerosity requirement satisfied when evidence showed that defendant sold 12,652

3  class vehicles).

4                    **b.    <u>Numerous Common Issues Exist</u>**

5         Commonality exists where Class Members' "situations share a common issue

6  of law or fact, and are sufficiently parallel to insure a vigorous and full presentation

7  of all claims for relief." *Wolin*, 617 F.3d at 1172 (internal quotation omitted). "The

8  commonality requirement is construed liberally, and the existence of some common

9  legal and factual issues is sufficient to satisfy the requirement." *In re Northrop*

10 *Grumman*, 2011 WL 3505264, at * 7; *see also Thomas v. Baca*, 231 F.R.D. 397, 400

11 (C.D. Cal. 2005) (observing that one significant issue may warrant certification). In

12 automobile-defect cases, commonality is often found when the most significant

13 question concerns the existence of a defect. *See, e.g., Wolin*, 617 F.3d at 1172

14 (finding commonality requirement easily satisfied where prospective class members'

15 claims involved same alleged defect, covered by the warranty, and found in vehicles

16 of the same make and model); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526

17 (N.D. Cal. 2004) (finding commonality satisfied when "Ford knew that there was a

18 risk that the plastic intake manifolds would crack prematurely, but concealed that

19 information from ordinary consumers.").

20        Without question, the relatively low commonality hurdle is satisfied here. The

21 claims of all prospective Class Members involve the same alleged common defect,

22 the Chrome Defect, and the same harm, flaking, peeling and cracking of the chrome

23 trim pieces. Likewise, Plaintiff asserts multiple common issues, including: whether

24 the Class Vehicles suffer from a common defect, whether MBUSA knew about the

25 _____

26 (...Continued)

27 in a total number of CLS vehicles of 12,222. Thus, the estimate of approximately
   12,000 class vehicles is appropriately based on the testimony of Mr. Edwards. See,
28 Edwards Dep., exhibit 3 to Harris Decl., 12: 2-15; 13: 25-14: 20; 97: 23-98: 1.

**KNAPP,
PETERSEN
& CLARKE**

-12-

1  defect, whether MBUSA failed to disclose the defect, whether the defect is a safety

2  concern, and whether MBUSA breached the California Consumer Legal Remedies

3  Act, is guilty of fraudulent concealment or whether MBUSA breached the implied

4  warranty. (See, Doc. 28, No.'s 365-369.) See, *Wolin*, 617 F.3d 1168, wherein the

5  Ninth Circuit reversed the district court's denial of class certification in a class action

6  . *Id.* at 1170. The Ninth Circuit found the commonality threshold "easily" satisfied

7  based on several core issues common to all Class Members, including: "1) whether

8  the [Class Vehicles] alignment geometry was defective; 2) whether Land Rover was

9  aware of this defect; 3) whether Land Rover concealed the nature of the defect; 4)

10  whether Land Rover's conduct violated the Michigan Consumer Protection Act or

11  the Florida Deceptive and Unfair Trade Practices Act; and 5) whether Land Rover

12  was obligated to pay for or repair the alleged defect pursuant to the express or

13  implied terms of its warranties." Id. at 1182. These common issues mirror those

14  alleged by Plaintiff here. (See Doc. 85 ¶ 25.) There can be no question that

15  commonality is satisfied here.

16        c.    **Plaintiff's Claims Are Typical of Those of Other Class**

17              **Members**

18        "The purpose of the typicality requirement is to assure that the interests of the

19  named representative align with the interests of the class." *Wolin*, 617 F.3d at 1175

20  (internal quotation omitted). "The test of typicality is whether other members have

21  the same or similar injury, whether the action is based on conduct which is not

22  unique to the named plaintiffs, and whether other class members have been injured

23  by the same course of conduct." *Id.* at 1175 (internal quotation omitted). "Typicality,

24  like commonality, is a "permissive standard." *In re Northrop Grumman*, 2011 WL

25  3505264, at *9 (quoting *Hanlon*, 150 F.3d at 1020). Indeed, "under the rule's

26  permissive standards, representative claims are 'typical' if they are reasonably

27  coextensive with those of absent class members; they need not be substantially

28  identical." *Alonzo v. Maximus, Inc.*, ___ F.3d ___, No. 2:08-CV- 06755-JST

KNAPP,
PETERSEN
& CLARKE

-13-

1939969 1  08000/00941

1   (MANx), 2011 WL 2437444, at * 8 (C.D. Cal. June 17, 2011) (internal quotation

2   omitted).

3       Here, the claims arise from a common course of conduct and legal theory:

4   MBUSA violated California consumer protection laws and committed fraud by

5   selling vehicles with a defect, failing to inform consumers of the defect, and failing

6   to properly repair the defect. Plaintiff experienced the Chrome Defect common to all

7   Class Members, and Plaintiff's experiences with the Class Vehicles are typical of

8   those of the Class. That is, Plaintiff's vehicle and those of the Class have the same

9   Chrome Defect. (Avedisian Decl., ¶¶ 1-10; Stapleford Decl., ¶¶ 1-25.)

10      *Wolin* is again instructive. There, Land Rover argued that the named plaintiffs'

11   claims were not typical because their tires supposedly indicated wear not attributable

12   to vehicle alignment. *Wolin*, 617 F.3d at 1175. The Ninth Circuit disagreed,

13   observing that plaintiffs alleged they, like all class members, were injured by the

14   vehicles' defective alignment geometry, and that plaintiffs sought recovery pursuant

15   to the same legal theories as the class. *Id.* The court also observed that when

16   plaintiffs experienced premature tire wear (at six months, nine months, or later)

17   implicated the extent of their damages, not typicality. *Id.* As in *Wolin*, Plaintiff's

18   claims are typical of the Class here.

19         **d.    Plaintiff and Her Counsel Will Adequately Represent the**

20                 **Interests of Absent Class Members**

21      "The final hurdle interposed by Rule 23(a) is that 'the representative parties

22   will fairly and adequately protect the interests of the class." *Hanlon*, 150 F.3d at

23   1020 (quoting Fed. R. Civ. P. 23(a)(4)). In determining whether a proposed class

24   representative will fairly and adequately protect the interests of the class, the Court

25   asks two questions. First, do the proposed class representative and his counsel "have

26   any conflicts of interest with other class members?" *Johnson v. Gen. Mills, Inc.*, 275

27   F.R.D. 282, 288 (C.D. Cal. 2011) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957

28   (9th Cir. 2003)). Second, will the proposed class representative and his counsel

KNAPP,
PETERSEN
& CLARKE

-14-

1030060 1   08000/00041

1  "prosecute the action vigorously on behalf of the class?" *Id.*

2  Plaintiff has submitted declarations in support of this Motion, wherein she and

3  her husband explain MBUSA's failure to repair the Chrome Defect in Plaintiff's

4  vehicle.[11] Plaintiff is representatives of the Class she seeks to represent, and she

5  suffers from the same injury—flaking, cracking and peeling due to the Chrome

6  Defect—as members of the proposed Classes. She has kept abreast of the litigation,

7  assisted in discovery, willingly agreed to submit to deposition, and made her vehicle

8  available for inspection.[12] There can be no reasoned argument that the Named

9  Plaintiff has any conflicts that go "directly to the subject matter of the litigation," and

10  the Court should conclude that she will adequately represent the Class.

11  Likewise, Plaintiff's Counsel satisfies the adequacy requirement. In retaining

12  Knapp, Petersen & Clarke and The Law Office of Robert L. Starr, Plaintiff has

13  employed counsel with the unquestionable qualifications, experience, and resources

14  necessary to prosecute this case to a successful resolution. As stated in their

15  declarations, Plaintiff's Counsel has extensive experience and success in class action

16  and complex litigation, including class actions involving defective automobiles.

17  Thus, Plaintiff's counsel satisfies the adequacy of representation requirement. (See

18  Harris Decl., ¶ 13; Starr Decl., ¶ 3.)

19  **3.** **The Class Meets the Requirements of Rule 23(b)(3)**

20  Rule 23(b)(3) requires the Court to find that "the questions of law or fact

21  common to class members predominate over any questions affecting only individual

22  members, and that a class action is superior to other available methods for fairly and

23  efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Predominance and

24  superiority are easily found here.

25

26  ───────────────────

27  [11] (Avedisian Decl., ¶¶ 1-10; Acevedo Decl., ¶¶ 1-9 and exhibits 1-4.)

28  [12] (Harris Decl., ¶ 14.)

KNAPP,
PETERSEN
& CLARKE

1039060.1  08000/00941

### a.    Common Issues Predominate Over Individual Ones

"The Rule 23(b) (3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The "main concern in the predominance inquiry. . . [is] the balance between individual and common issues." *Mevorah v. Wells Fargo Home Mortg.*, 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

The Ninth Circuit addressed predominance with respect to excessive tire-wear at length in *Wolin*. 617 F.3d at 1173-74. There, defendant Land Rover tried to defeat class certification of breach of express warranty and consumer protection claims by arguing that the prospective class members' vehicles did not suffer from a common defect, but rather the class members' tire wear was caused by individual factors such as driving habits and weather. *Id.* at 1173. The district court agreed, concluding class certification was inappropriate because the plaintiffs did not prove that the defect manifested in a majority of the class's vehicles. *Id.*

The Ninth Circuit reversed, finding that "proof of the manifestation of the defect is not a prerequisite to class certification." *Id.* at 1773. The Ninth Circuit elaborated that Land Rover's arguments addressed the merits of the claim, which do not overlap with the predominance test. *Id.* The court ultimately found that common issues predominated with respect to the class members' breach of express warranty and consumer protection claims because the plaintiffs asserted that a defect existed in the alignment of the geometry of the vehicles, not the tires. *Id.* The court noted that although individual issues may affect premature tire wear, they do not affect whether the vehicles were sold with an underlying alignment defect. *Id.* The court held, moreover, that existence of the defect and whether Land Rover failed to reveal

KNAPP,
PETERSEN
& CLARKE

-16-

1030060 1  08000/00941

1  material facts in violation of consumer protection laws were susceptible to proof by

2  generalized evidence. *Id.* This was likewise true of plaintiffs' breach of express

3  warranty claim because all of the class members were covered by the same warranty

4  and asserted that Land Rover refused to repair the tires and the geometry defect

5  pursuant to the terms of the warranty. *Id.* at 1174-75. The claims here are similar to

6  those in *Wolin*, involving a Chrome Defect, and class members with vehicles which

7  have parts with the same Chrome Defect. (SAC, ¶ 5.) Common issues predominate

8  over individual issues here, making certification appropriate. *See Yamada v. Nobel*

9  *Biocare Holding, No.* 2:10-cv04849-JHN-PLAx, ___ F.3d ___ , 2011 WL 3634197,

10  at *4 (C.D. Cal. Aug. 12, 2011) (finding predominance satisfied when claims

11  involved same device with the same alleged defect, marketed using the same alleged

12  material omissions and misrepresentations, and covered by the same warranty).

13                  **(1)**     **Plaintiff's Claims Stem From Common Defects**

14        The claims of all prospective Class Members in this litigation stem from a

15  single defect common to all Class Vehicles: The Chrome Defect. The Stapelford

16  Declaration, at ¶¶ 1-25 confirms that this defect is common to all Class Vehicles.

17  That is, ***all*** of the Class Vehicles have the same type of chrome trim pieces. (*Ibid.*)

18  Without question, the evidence overwhelmingly indicates that the Class Vehicles

19  suffered from a single, common defect susceptible to proof by generalized evidence.

20  *See Wolin*, 617 F.3d at 1168.

21                  **(2)**     **The Claims Are Susceptible to Common Proof**

22        Predominance is satisfied in light of these core, common issues. *See Wolin*,

23  617 F.3d at 1173-74, *Yamada*, 2011 WL 3634197, at *8 (finding breach of express

24  warranty claims susceptible to classwide proof); *see also In re Zurn Pex Plumbing*

25  *Prod. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011) ("The interpretation of Zum's

26  warranty and its application to all of the dry plaintiffs is a common question that

27  lends itself to efficient class wide resolution under Rule 23."); *Daffin v. Ford Motor*

28  *Co.*, 458 F.3d 549, 550 (6th Cir. 2006) (same).

KNAPP,
PETERSEN
& CLARKE

-17-

     **(3)**    **<u>MBUSA Uniformly Failed to Inform Consumers of the</u>**

              **<u>Defect in Violation of California's Consumer Protection</u>**

              **<u>Law And In Violation Of The Duty To Disclose</u>**

              **<u>Material Defects</u>**

Common issues also predominate regarding Plaintiff's consumer protection theory, and her claim for fraud, including: (1) whether the Class Vehicles' Chrome Trim Pieces are defective; (2) whether MBUSA was aware of the alleged defects; (3) whether MBUSA had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that MBUSA allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated state consumer protection laws or constituted fraudulent non-disclosure. *See Chamberlan*, 402 F.3d at 962 (finding common issues identical to those in the present litigation "plain enough that no further explanation is required to justify the district court's decision" to certify the class); *Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so."); *Yamada* 2011 WL 3634197, at *5 ("In the instant case, common issues also predominate, inter alia, whether the NobelDirect implant was and is defective, whether Defendants were aware of the alleged defect, and whether Defendants violated a duty to disclose such knowledge.")

Moreover, regarding California law in particular, the Ninth Circuit recently confirmed that reliance under the CLRA may be established on a class-wide basis if the trial court finds that material misrepresentations have been made to the entire class. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011). The Court specifically noted that this rule applies to cases regarding omissions or "failures to disclose." *Id.* (internal citations omitted). The record here justifies similar inferences of common reliance. Plaintiff asserts that by failing to disclose the Chrome Defect to the Class, Defendant has intentionally concealed material facts. (SAC ¶¶ 37-44.)

1039969.1  08000/00941

1  Plaintiff further asserts that the Chrome Defect was material because a reasonable

2  consumer would have considered the defect to be important in deciding whether to

3  purchase the Class Vehicles. (*Id.* ¶ 42.) Under these circumstances, a finding of class

4  wide reliance is appropriate. See *Yamada*, 2011 WL 3634197, at *4 (finding class

5  member would not have purchased product without having been influenced by

6  defendants' uniform marketing claims and that no reasonable class member would

7  have purchased and used the product had he been aware of the alleged defective

8  design); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal.

9  2006) (holding that no rational class member would have purchased the product if

10  made aware of the alleged misrepresentation).

11      Similarly, because the focus of the UCL is on a defendant's conduct, rather

12  than a plaintiff's damages, "relief under the UCL is available without individualized

13  proof of deception, reliance and injury." *Stearns*, 655 F.3d 1013 (9th Cir. 2011)

14  (quoting *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)). Rather, the fundamental

15  inquiry is whether a defendant's conduct is likely to deceive the public. *Schramm v.*

16  *JPMorgan Chase Bank*, NA., No. LA CV09-09442 JAK, 2011 WL 5034663, at *8

17  (C.D. Cal. Oct. 19, 2011). In *Stearns*, the Ninth Circuit found that because all class

18  members encountered the same website and the same links and prompts, common

19  questions predominated over individual ones with respect to the customers' UCL

20  claims. 655 F.3d at 1013.

21      Here, of course, Plaintiff's claims are based on material omissions that are

22  necessarily identical as to all Class Members. Class members were not exposed to

23  "disparate information;" rather, Plaintiff alleges that that MBUSA uniformly

24  withheld information concerning the Chrome Defect from all class members.

25  Common questions unquestionably predominate as to these issues. See *Schramm*,

26  2011 WL 5034663, at *8 (citing Stearns and agreeing that individualized inquiries

27  into each class member's knowledge and reliance are not necessary).

28  ////

KNAPP,
PETERSEN
& CLARKE

-19-

1    Individual issues of causation likewise do not destroy predominance.[13] *See*

2  *Yamada*, 2011 WL 3634197, at *5. *Yamada* involved a class action related to

3  allegedly defective dental implants. The defendants argued numerous factors could

4  cause dental implants to fail, and that therefore individual causation issues

5  predominated. Id. at *5. Likening the case to *Wolin*, the court rejected the argument,

6  finding that the existence of other factors leading to implant failure did not affect

7  whether the defendants marketed and sold a defective product:

8    The relevant inquiry focuses on the existence of the defect as

9    manufactured and not on the factors leading to failure and injury.

10   Though individual factors might affect implant failure, they do not

11   affect whether the implants were sold with a defect and subsequently

12   need to be removed, repaired, or replaced. Plaintiff's allegations are

13   therefore susceptible to proof by generalized evidence.

14  *Id.*

15   As in *Yamada*, the relevant inquiry here is not whether other factors could lead

16  to peeling, flaking and cracking, but rather, whether MBUSA marketed and sold

17  vehicles with a Chrome Defect. This issue can easily be proven with common,

18  generalized evidence. *See id.*; see also *Keilholtz v. Lennox Hearth Prods. Inc.*, 268

19  F.R.D. 330, 343 (N.D. Cal. 2010) ("Causation as to each class member is commonly

20  proved more likely than not by materiality.") (internal quotation omitted).

21   Thus, common issues predominate concerning Plaintiff's consumer protection,

22  Unfair Competition and fraud theories.

23   **(4)   The Implied Warranty Theory Is Subject To Common**

24   **Proof**

25   The following issues regarding the Implied Warranty Theory are subject to

26

27  [13] Thus, for example, Defendant's efforts to address potential environmental factors

28  or use of harsh cleaning materials do not negate predominance.

KNAPP,
PETERSEN
& CLARKE

-20-

1939969.1   08000/00941

1  common proof: Whether the chrome trim pieces "(1) Pass without objection in the

2  trade under the contract description; (2) Are fit for the ordinary purposes for which

3  such goods are used; (3) Are adequately contained, packaged, and labeled;…(Cal.

4  Civ. Code § 1791.1(a)) and (4) are in safe condition. Doc. 28, No.'s 365-366.

5      Here, common issues concerning the implied warranty claim predominate,

6  making class certification appropriate for this theory.

7          **b.    The Class Action Device is Superior**

8      The factors relevant to assessing superiority include "(A) the class members'

9  interests in individually controlling the prosecution or defense of separate actions;

10  (B) the extent and nature of any litigation concerning the controversy already begun

11  by or against class members; (C) the desirability or undesirability of concentrating

12  the litigation of the claims in the particular forum; and (D) the likely difficulties in

13  managing a class action." *Wolin*, 617 F.3d at 1175; Fed. R. Civ. P. 23(b) (3) (A) —

14  (D). "[The purpose of the superiority requirement is to assure that the class action is

15  the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d

16  at 1175 (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal

17  Practice and Procedure § 1779 at 174 (3d ed. 2005).)

18          **(1)    No Individual Litigant Could Marshal the Resources**

19               **Plaintiff's Counsel Can Devote to This Litigation**

20      Without question, the cost of repair of the Chrome Defect, e.g., Plaintiff spent

21  approximately $109 to replace the cup holder, is simply too low to incentivize many

22  class members to litigate their claims individually. (Acevedo Decl., ¶ 7.) *See*

23  *Parkinson*, 258 F.R.D. at 597 (finding that even though the CLRA permits for

24  recovery of attorneys' fees, litigation costs would likely dwarf potential recovery).

25  Here, this is especially true given the high cost of marshaling the evidence (expert

26  and otherwise) necessary to litigate the claims at issue, and the disparity in resources

27  between the typical class member and a well-funded, litigation-savvy Defendant like

28  MBUSA. *Hartless v. Clorox Co.*, 273 F.R.D. 630, 639 (S.D. Cal. 2011) (observing

KNAPP,
PETERSEN
& CLARKE

-21-

1  that cost of securing expert testimony would render individual lawsuits cost

2  prohibitive); *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 29 (D. Mass. 2010)

3  (finding that the "considerable disparity in resources" between a large corporation

4  and an individual plaintiff supports a finding that class treatment is superior).

5  Plaintiff's Counsel has already devoted significant resources to this class litigation,

6  including deposing several MBUSA witnesses, orchestrating a labor-intensive

7  written-discovery and document-review effort, allowing MBUSA to inspect the

8  vehicle, retaining experts, and engaging in significant motion practice. (See Harris

9  Decl.¶ 15.)

10      Not only will individual resources be spared with class certification, but

11  already-strapped judicial resources will also be conserved. *See Parkinson*, 258

12  F.R.D. at 597 (finding a class action superior when the burden on the judiciary would

13  be significant and unnecessary, given the existence of multiple common questions);

14  *Hartless*, 273 F.R.D. at 639 (observing that "multiple individual claims could

15  overburden the judiciary"). Here, the unfathomable prospect of thousands of

16  individuals litigating the same core legal and factual issues would unquestionably

17  consume judicial resources that could otherwise be conserved with a single

18  proceeding. Class certification will therefore benefit both Plaintiff and the judicial

19  system alike.

20              **(2)**     **The Class Is Tailored to Eliminate Manageability**

21                          **Concerns**

22      The proposed class is narrowly tailored to include ***only*** those plaintiffs and

23  claims appropriately suited for class treatment. Here, of course, Plaintiff seeks only

24  certification of theories based on the CLRA, Unfair Competition, fraud and implied

25  warranty, none of which require a showing of notice or reliance under the

26  circumstances of this case. Moreover, the common defect affecting the Class

27  Vehicles, and MBUSA's uniform failure to remedy the defect, renders other aspects

28  of the proposed class action eminently manageable. Plaintiff anticipates a two-phase

KNAPP,
PETERSEN
& CLARKE

-22-

1  trial, with Phase I dedicated to establishing MBUSA's liability, and Phase II (if even

2  necessary) dedicated to damage proceedings. This approach was recently approved in

3  *Wolin* following remand by the Ninth Circuit. *Gable v. Land Rover N.A. Inc.*, No.

4  SACV 07-0376, 2011 WL 3563097, at *6 (C.D. Cal. July 25, 2011) (approving

5  bifurcation of class action into liability and damages phases).

6      Phase I will focus on the common issues discussed above, including (1) the

7  Chrome Defect, (2) MBUSA's failure to properly repair the defect, (3) MBUSA's

8  awareness of the defect, (3) MBUSA's duty to disclose its knowledge of the defect

9  and its failure to do so, (4) whether the facts that MBUSA allegedly failed to disclose

10  were material, and (5) whether the defect is a safety concern.

11      Once liability is established, individual damage issues (to the extent they even

12  exist) can be easily managed during Phase II. *See Gable*, 2011 WL 3563097, at *6.

13  *See also*, *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir.

14  2010) (finding that although "[t]he amount of damages is invariably an individual

15  question . . . [it] does not defeat class action treatment"); accord *Yamada*, 2011 WL

16  3634197, at *5 (holding that individualized damages do not preclude class

17  certification).

18                              **IV.**

19                          **CONCLUSION**

20      For the forgoing reasons, Plaintiff respectfully requests that the Court certify

21  the Class as requested herein.

22  Dated: January 24, 2014            KNAPP, PETERSEN & CLARKE

23

24                          By: /s/ Stephen M. Harris

25                              Stephen M. Harris
                                Attorneys for Plaintiff
26                              ANI AVEDISIAN aka ANI ACEVEDO,
                                individually, and on behalf of a class of
27                              similarly situated individuals

28

KNAPP,
PETERSEN
& CLARKE

-23-

1030060.1  08000/00941